UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SCOTT JOHNSON,<br><br>         Plaintiff,<br><br>    v.<br><br>OAKWOOD CENTER LLC, et al.,<br><br>         Defendants. | Case No.19-cv-01582-VKD<br><br>**ORDER FOR REASSIGNMENT TO A DISTRICT JUDGE**<br><br>**REPORT AND RECOMMENDATION RE AMENDED MOTION FOR DEFAULT JUDGMENT**<br><br>Re: Dkt. No. 20 |

In this disability rights action, plaintiff Scott Johnson sues for alleged accessibility violations he says he encountered at Ceci's Liquor Store ("Store") in San Jose, California. He asserts claims under Title III of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12181, *et seq*. and the California Unruh Civil Rights Act ("Unruh Act"), Cal. Civ. Code §§ 51-53. Mr. Johnson seeks injunctive relief, as well as statutory damages, attorneys' fees and costs.

Defendants Oakwood Center, LLC ("Oakwood Center") and Long Thanh Do failed to answer the complaint or to otherwise appear in this matter. At Mr. Johnson's request, the Clerk of the Court entered Long Thanh Do's default on May 15, 2019 and Oakwood Center's default on May 30, 2019. Dkt. Nos. 11, 13.

Now before the Court is Mr. Johnson's amended motion for default judgment. In his original motion, Mr. Johnson sought $8,000 in statutory damages, $670 in litigation costs, and $5,919 in attorneys' fees. Dkt. No. 17. However, his original moving papers sought fees at lower rates[1] than those that are now being requested in the pending amended motion. Dkt. No. 17-4.

---

[1] Mr. Johnson's original motion sought fees at $425/hour for attorneys Mark Potter, Russell Handy and Phyl Grace, as well as fees at $350/hour for attorneys Christina Carson and Dennis

Additionally, the original motion sought fees for attorneys Phyl Grace and Christina Carson, who do not appear on the submitted billing statement,[2] and failed to mention attorney Amanda Seabock, who does appear on the billing statement. *Id.*

Mr. Johnson subsequently withdrew his original motion (Dkt. No. 18) and filed the present amended motion for default judgment, which now seeks fees for work performed by Ms. Seabock, but no longer requests fees for work performed by Ms. Grace or for Ms. Carson. Dkt. No. 20-4. As noted above, the amended motion also seeks fees at a higher rate than originally requested,[3] resulting in requested fees of $6,135, in addition to the $8,000 in statutory damages and $670 in costs. Additionally, as discussed below, the amended motion includes a civil minute order apparently issued by the Central District of California in Case No. CV 18-5136 MRW *Lindsay v. Grupo Glemka.* Dkt. No. 20-9.

The docket indicates that Mr. Johnson served his original motion papers by mailing them to defendants (Dkt. No. 17-9), but no certificate of service was included with the amended motion for default judgment. Although it is unclear whether Mr. Johnson provided defendants with written notice of the present amended motion,[4] a party in default is not entitled to notice under Fed. R. Civ. P. 55 unless he has appeared, formally or informally, and demonstrated a clear intent to defend the suit. Fed. R. Civ. P. 55(b)(2) ("If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing."); *In re Roxford Foods, Inc.*, 12 F.3d 875, 879 (9th Cir.1993) ("While it is true that the failure to provide 55(b)(2)

---

Price. Dkt. No. 17-4.

[2] Ms. Carson did appear for oral argument on this matter and confirmed that, other than her appearance at the motion hearing, she did not perform any work on this case. She also indicated that the time incurred in connection with her appearance at the motion hearing is not being included in Mr. Johnson's request for fees.

[3] Mr. Johnson's amended motion seeks fees at $650/hour for Messrs. Potter and Handy (albeit, portions of the supporting declaration from Mr. Price continue to reference a $425 hourly rate). The amended motion also seeks fees at $450/hour for Mr. Price and Ms. Seabock. Dkt. No. 20-4.

[4] At the hearing on the present motion, the Court directed Mr. Johnson to serve defendants with his amended motion papers, but it is not clear whether he has, in fact, done so.

notice, if the notice is required, is a serious procedural irregularity that usually justifies setting aside a default judgment or reversing for the failure to do so, notice is only required where the party has made an appearance.") (quotations and citations omitted); *Wilson v. Moore & Assocs., Inc.*, 564 F.2d 366, 368 (9th Cir.1977) ("No party in default is entitled to 55(b)(2) notice unless he has 'appeared' in the action."). As discussed above, the record reflects that neither Oakwood Center nor Long Thanh Do have appeared, formally or otherwise, in this matter.

Defendants have not opposed or otherwise responded to the motion, and briefing is closed. Civ. L.R. 7-3(a). The Court held a hearing on the matter on August 20, 2019. Mr. Johnson appeared; defendants did not. Mr. Johnson was directed to file, by September 13, 2019, supplemental briefing regarding service of the complaint and summons on Oakwood Center. No such supplemental filing was made.[5]

Mr. Johnson has consented to proceed before a magistrate judge. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73. However, as defendants have not appeared and are in default, the magistrate judge does not have the consent of all parties. Accordingly, this Court directs the Clerk of the Court to reassign this action to a district judge, with the following report and recommendation that Mr. Johnson's motion for default judgment be granted in part and denied in part.

## REPORT AND RECOMMENDATION

### I.    BACKGROUND

According to his complaint, Mr. Johnson is a level C-5 quadriplegic who cannot walk and has significant manual dexterity impairments. He says he uses a wheelchair for mobility and has a specially equipped van with a ramp that enables him to move in and out of his vehicle. Dkt. No. 1 ¶ 1; Dkt. No. 20-5 ¶¶ 2-3. Long Thanh Do is the alleged owner of the Store, and Oakwood Center reportedly owns the real property where the Store is located. Dkt. No. 1 ¶¶ 2-7; Dkt. No. 20-4 ¶¶ 3-5; Dkt. No. 20-8.

Mr. Johnson claims that during several visits between December 2018 and January 2019, he encountered barriers with the parking space, paths of travel, and transaction counter that

---

[5] The only filing submitted by Mr. Johnson on September 13, 2019 is a notice of a change of address for his counsel. Dkt. No. 23.

prevented him from enjoying full and equal access to the Store's facilities. Dkt. No. 1 ¶¶ 14-24; Dkt. No. 20-5; Dkt. No. 20-7. When Mr. Johnson visited the Store on December 18, 2018, he says he followed a sign directing him to the "van accessible" space, but found that the space had mounding slopes and was poorly maintained, with cracking and broken asphalt. Dkt. No. 20-5 ¶¶ 5-6. Mr. Johnson parked in that space, but says he struggled with the slopes and cracked asphalt. *Id.* ¶ 6. Once inside the Store, Mr. Johnson alleges that he could not navigate through approximately half the Store because display racks and merchandise were stacked in a way that made paths too narrow to accommodate a wheelchair. *Id.* ¶ 7. He further states that he went to the sales counter to purchase cigarettes, but the transaction counter was too high, with no lowered portion for use by persons with disabilities. *Id.* ¶ 8. Mr. Johnson says he returned to the Store twice in January 2019 because it carried his preferred brand of cigarettes. *Id.* ¶ 10. Nevertheless, he claims that the alleged access barriers "created difficulty and discomfort for [him]." Dkt. No. 1 ¶ 25. While he says he would like to return to the Store, both as a customer and to assess compliance with accessibility laws, Mr. Johnson says he has decided not to do so "due to the frustrating barriers" at the premises. Dkt. No. 20-5 ¶ 11; *see also* Dkt. No. 1 ¶ 28.

## II.     LEGAL STANDARD

Default may be entered against a party who fails to plead or otherwise defend an action. Fed. R. Civ. P. 55(a). After entry of default, a court may, in its discretion, enter default judgment. Fed. R. Civ. P. 55(b)(2);[6] *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In deciding whether to enter default judgment, a court may consider the following factors: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). In considering these factors, all factual

---

[6] "A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared." Fed. R. Civ. P. 55(b)(2). There are no such issues presented here.

allegations in the plaintiff's complaint are taken as true, except those relating to damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987). The court may hold a hearing to conduct an accounting, determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter. Fed. R. Civ. P. 55(b)(2).

## III. DISCUSSION

### A. Jurisdiction

"When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).

Federal question jurisdiction is based on Mr. Johnson's ADA claim for relief. 28 U.S.C. § 1331. The Court has supplemental jurisdiction over his Unruh Act claim pursuant to 28 U.S.C. § 1367. This Court is also satisfied that personal jurisdiction exists over both defendants. Mr. Johnson's complaint and public records submitted with the present motion indicate that Long Thanh Do owns the Store and is domiciled in California and that Oakwood Center is a California limited liability company that owns the real property in San Jose, California on which the Store is located. Dkt. No. 1 ¶¶ 2-7; Dkt. No. 20-4 ¶¶ 3-5; Dkt. 20-8. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile . . .. With respect to a corporation, the place of incorporation and principal place of business are paradig[m] . . . bases for general jurisdiction.") (internal quotations and citation omitted) (alteration in original); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) ("Specific jurisdiction . . . depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.").

### B. Service of Process

#### 1. Defendant Long Thanh Do

Pursuant to Rule 4(e) of the Federal Rules of Civil Procedure, an individual defendant may be served by: (1) delivering a copy of the summons and complaint to the individual personally; (2) leaving a copy of the summons and complaint at the individual's dwelling or usual place of

abode with someone of suitable age and discretion who resides there; or (3) delivering a copy of the summons and complaint to an agent authorized by appointment or law to receive service of process.  Fed. R. Civ. P. 4(e)(2).  Alternatively, an individual defendant may be served with process pursuant to the law of the state where the district court is located.  Fed. R. Civ. P. 4(e)(1).  Under California law, individual defendants may be served by several means, including personal delivery of the summons and complaint to the individual or the individual's authorized agent.  Cal. C.C.P. §§ 415.10, 416.90.

The record indicates that service properly was effected as to Long Thanh Do, who was personally served with process at the Store.  Dkt. No. 8.

### 2.      Defendant Oakwood Center

Pursuant to Rule 4(h)(1)(B) of the Federal Rules of Civil Procedure, a domestic corporation may be served:

> by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant.

Fed. R. Civ. P. 4(h)(1)(B).  Alternatively, Rule 4 provides that service on a corporation may be made by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made."  Fed. R. Civ. P. 4(e)(1), (h)(1)(A).

California Code of Civil Procedure section 416.10 provides that a corporation may be served by "delivering a copy of the summons and the complaint . . . [t]o the person designated as agent for service of process" or "[t]o the president, chief executive officer, or other head of a corporation, a vice president, a secretary or assistant secretary, a treasurer or assistant treasurer, a controller or chief financial officer, a general manager or person authorized by the corporation to receive service of process."  Cal. Code Civ. Proc. § 416.10(a), (b).  In lieu of personal delivery, California law permits substituted service on a person to be served under section 416.10 by (1) "leaving a copy of the summons and the complaint during usual office hours in his or her office . . . with the person who is apparently in charge thereof" and (2) "thereafter mailing a copy

of the summons and complaint by first-class mail, postage prepaid to the person to be served at the place where a copy of the summons and complaint were left." Cal. Code Civ. Proc. § 415.20(a). However, before resorting to substituted service, "a plaintiff must first make reasonably diligent (i.e., two or three) attempts at personal service." *Shaw v. Five M, LLC*, No. 16-cv-03955-BLF, 2017 WL 747465, at *2 (N.D. Cal., Feb. 27, 2017) (citing *Bein v. Brechtel–Jochim Group, Inc.*, 6 Cal. App. 4th 1387, 1390 (1992)).

Mr. Johnson filed a proof of service suggesting that on April 13, 2019, the process server attempted to personally serve Sin Yee Wong, Oakwood Center's registered agent for service of process. Dkt. No. 9. The proof of service indicates that the process server instead resorted to substituted service, under California Code of Civil Procedure section 416.10, by leaving documents with an Eva Wong (identified as a "Co-occupant" at the service address) and then mailing them to Sin Yee Wong at that same address. *Id.* The proof of service, however, does not include any declaration of diligence regarding prior attempts at personal service. Indeed, a box on the proof of service form for the process server to note diligence in any such prior personal service attempts is unchecked, suggesting that no attempts were made to personally serve Oakwood Center's agent. *Id.* at 1. Because the sole proof of service indicates that the complaint and summons were left with Eva Wong, and not Oakwood Center's agent for service of process, Sin Yee Wong, Mr. Johnson has not shown that the requirements of Rule 4(h)(1)(B) have been met. *See Heifetz v. Breed Properties*, No. 16-1490 CRB, 2017 WL 713303, at *3 (N.D. Cal., Feb. 23, 2017). Moreover, "[o]ne attempt at personal service does not constitute a reasonably diligent attempt at personal service sufficient to allow substituted service on a defendant." *Id.* (citing *Bein*, 6 Cal. App. 4th at 1390). Accordingly, this Court concludes that service was not properly effected as to Oakwood Center and that Mr. Johnson's motion for default judgment should be denied as to that defendant. *Id.*

Because the Court is satisfied that Long Thanh Do properly was served, it will consider the merits of the present motion as to that defendant.

## C. *Eitel* Factors

For the reasons to be discussed, the *Eitel* factors weigh in favor of entering default

judgment.

### 1. The possibility of prejudice to Mr. Johnson

The first *Eitel* factor requires the Court to consider whether Mr. Johnson would be prejudiced if default judgment is not entered. Unless default judgment is entered, Mr. Johnson will have no other means of recourse. That is sufficient to satisfy this factor. *See, e.g., Ridola v. Chao*, No. 16-cv-02246-BLF, 2018 WL 2287668, at *5 (N.D. Cal., May 18, 2018) (finding that the plaintiff would be prejudiced if default judgment were not entered because she "would have no other means of recourse against Defendants for the damages caused by their conduct.").

### 2. The merits of Mr. Johnson's claims and the sufficiency of the complaint

Pursuant to the second and third *Eitel* factors, this Court concludes that the complaint alleges meritorious substantive claims for relief.

#### a. ADA Title III, 42 U.S.C. § 12181, *et seq*.

Title III of the ADA prohibits discrimination by places of public accommodation: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). For purposes of Title III, discrimination includes "a failure to remove architectural barriers . . . in existing facilities . . . where such removal is readily achievable." *Id*. § 12182(b)(2)(A)(iv). "Readily achievable" means "easily accomplishable and able to be carried out without much difficulty or expense." *Id*. § 12181(9).

#### i. Mr. Johnson's Article III Standing

Turning first to Mr. Johnson's Article III standing to pursue his ADA claim: To establish Article III standing to bring an ADA claim, Mr. Johnson must demonstrate that he suffered an injury in fact, that the injury is fairly traceable to defendants' challenged conduct, and that the injury can be redressed by a favorable decision. *Ridola*, 2018 WL 2287668 at *5 (citing *Hubbard v. Rite Aid Corp*., 433 F. Supp. 2d 1150, 1162 (S.D. Cal. 2006)). Mr. Johnson's complaint alleges that he is disabled within the meaning of the ADA; that he was denied equal access at the Store's facilities; and that he personally encountered barriers to full and equal access there. Dkt. No. 1

¶¶ 1, 12-22.  As discussed above, Mr. Johnson claims that during his visits to the Store, he encountered access barriers in the parking lot with respect to a poorly maintained space reserved for persons with disabilities, as well as inside the Store with respect to paths of travel that were too narrow, and a transaction counter that was too high.  Dkt. No. 1 ¶¶ 12-22; Dkt. No. 20-5 ¶¶ 5-10.  The complaint alleges that defendants failed to maintain the facilities in useable and working condition so as to provide access to disabled persons.  Dkt. No. 1 ¶ 26.  Moreover, Mr. Johnson claims that he is deterred from returning to the Store because of the alleged barriers.  Dkt. No. 1 ¶ 28; Dkt. No. 20-5 ¶ 11.  *See Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1008 (C.D. Cal. 2014) ("Indeed, '[d]emonstrating an intent to return to a non-compliant accommodation is but one way for an injured plaintiff to establish Article III standing to pursue injunctive relief.  A disabled individual also suffers a cognizable injury if he is *deterred* from visiting a noncompliant public accommodation because he has encountered barriers related to his disability there.") (quoting *Chapman v. Pier 1 Imports (U.S.), Inc.*, 631 F.3d 939, 949 (9th Cir. 2011)).

Mr. Johnson's factual allegations are accepted as true by virtue of Long Thanh Do's default, and an award of statutory damages and injunctive relief would redress Mr. Johnson's alleged injuries.  Accordingly, this Court finds that Mr. Johnson has Article III standing to sue under the ADA.

## ii. **ADA Claim Elements**

To prevail on his Title III discrimination claim, Mr. Johnson must show that (1) he is disabled within the meaning of the ADA; (2) defendant is a private individual that owns, leases, or operates a place of public accommodation; and (3) he was denied public accommodations by defendant because of his disability.  *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007).  To succeed on an ADA claim based on architectural barriers, Mr. Johnson "must also prove that: (1) the existing facility presents an architectural barrier prohibited under the ADA; and (2) the removal of the barrier is readily achievable."  *Ridola*, 2018 WL 2287668 at *5 (citations omitted).

Because the complaint's well-pled factual allegations are deemed true, Mr. Johnson has established that he is disabled within the meaning of the ADA.  Under the ADA, a physical impairment that substantially affects a major life activity, such as walking or performing manual

tasks, qualifies as a disability.  42 U.S.C. §§ 12102(1)(A), 12102(2)(A).  As discussed above, Mr. Johnson says he is a C-5 quadriplegic, with significant manual dexterity impairments.  Dkt. No. 1 ¶ 1; Dkt. No. 20-5 ¶ 2.  Mr. Johnson asserts that defendant Long Thanh Do owns the Store (Dkt. No. 1 ¶¶ 2-7; Dkt. No. 20-8), which is a place of public accommodation.  *See* 42 U.S.C. § 12181(7)(E) (listing "a bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment" as a "public accommodation").  Mr. Johnson also alleges that during his visits to the Store, he personally encountered access barriers.  Dkt. No. 1 ¶¶ 12-23; Dkt. No. 20-5 ¶¶ 5-10.

Mr. Johnson contends that the alleged barriers violate various provisions of the ADA Accessibility Guidelines ("ADAAG"), 1991 Standards and 2010 Standards.  The ADAAG provide "objective contours of the standard that architectural features must not impede disabled individuals' full and equal enjoyment of accommodations."  *Chapman*, 631 F.3d at 945.  "Accordingly, a violation of the ADAAG constitutes a barrier under the ADA."  *Ridola*, 2018 WL 2287668 at *7.  Mr. Johnson has sufficiently alleged that during his visits, he encountered architectural barriers prohibited under the ADA:

### *Parking Space*

The 1991 Standards provide that "[p]arking spaces and access aisles shall be level with surface slopes not exceeding 1:50 (2%) in all directions."  1991 Standards, 28 C.F.R., Part 36, App. D § 4.6.3.  Similarly, the 2010 Standards provide that "[p]arking spaces and access aisles serving them shall comply with [2010 Standards] 302."  2010 Standards, 36 C.F.R., Part 1191, App. D § 502.4.  Section 302 of the 2010 Standards, in turn, generally requires that "[f]loor and ground surfaces shall be stable, firm, and slip resistant . . .."  *Id*. § 302.1  Additionally, "[a]ccess aisles shall be at the same level as the parking spaces they serve."  *Id*. § 502.4.  Changes in level are not permitted and slopes shall not exceed 1:48, or 2%.  *Id*.

As discussed above, Mr. Johnson says that during his visits to the Store, the van accessible parking space was poorly maintained, with visible mounding slopes and cracked and broken asphalt.  Dkt. No. 20-5 ¶ 6.  Investigator Hedal Kadric avers that he visited the Store on January 22, 2019 and observed visibly cracked and uneven asphalt at the van accessible parking space.

Dkt. No. 20-6 ¶ 4. Using a digital level, Mr. Kadric says that slopes in that parking space and its access aisle ranged between 3.8% and 7.4%. *Id.*

### *Self-Service Shelves*

Under the 2010 Standards, self-service shelves, such as those found in stores, are required to "be located on an accessible route complying with [2010 Standards] 402."[7] 2010 Standards, 36 C.F.R., Part 1191, App. B § 225.2.2. Additionally, 2010 Standards Section 403, which pertains to walking surfaces that are part of an accessible route, requires such walking surfaces to have a minimum clear width of 36 inches. *Id.*, App. D § 403.5.1. Mr. Johnson acknowledges that the 2010 Standards provide an exception for what he terms "pinch points," where the clear width can be narrowed to a minimum of 32 inches. *Id.* However, he claims that during his visits, he was unable to navigate certain portions of the Store because the aisles were not wide enough to accommodate a wheelchair. Dkt. No. 20-5 ¶ 7. According to Mr. Kadric's measurements, the paths of travel inside the Store were no more than 24 inches wide, due to the manner in which crates of soda, boxes of wine, bottled water and other non-shelved merchandise were stacked. Dkt. No. 20-6 ¶ 5.

### *Transaction Counter*

The 1991 Standards provide that in stores where counters have cash registers and are provided for the sale or distribution of goods to the public, at least one of each type of counter must be at least 36 inches long, with a maximum height of 36 inches above the floor. 1991 Standards, 28 C.F.R., Part 36, App. D § 7.2(1). The 2010 Standards provide, in relevant part, that for "Parallel Approach" sales and service counters, "[a] portion of the counter surface that is 36 inches (915 mm) long minimum and 36 inches (915 mm) high maximum above the finish floor shall be provided." 2010 Standards, 36 C.F.R., Part 1191, App. D §§ 904.4, 904.4.1.

Mr. Johnson alleges that the Store has a parallel approach transaction counter that was more than 36 inches high, with no lowered, 36-inch long portion of the counter for use by persons with wheelchairs. Dkt. No. 20-1 at 8; Dkt. No. 20-5 ¶ 8. Mr. Kadric states that he measured the

---

[7] Mr. Johnson relies only on the 2010 Standards here.

1   Store's transaction counter to be 44 inches high, with no lowered 36-inch portion for use by

2   persons with disabilities.  Dkt. No. 20-6 ¶ 6.

3          As for the "readily achievable" element of his ADA claim, citing *Wilson v. Haria & Gogri*

4   *Corp.*, 479 F. Supp. 2d 1127 (E.D. Cal. 2007), Mr. Johnson argues that he need not show that

5   barrier removal is readily achievable because defendants bear the burden of pleading and proving,

6   as an affirmative defense, that removal of the barriers in question is not readily achievable.  That

7   affirmative defense has been waived, Mr. Johnson argues, because defendants have not appeared

8   in this matter.

9          Although the Ninth Circuit has yet to decide who bears the burden of proving that removal

10  of an architectural barrier is readily achievable, *see Johnson v. Altamira Corp.*, No. 16-cv-05335

11  NC, 2017 WL 1383469, at *3 (N.D. Cal., Mar. 27, 2017), a number of federal courts, including

12  within the Ninth Circuit, follow the burden-shifting framework articulated by the Tenth Circuit in

13  *Colorado Cross Disability v. Hermanson Family, Ltd.*, 264 F.3d 999 (10th Cir. 2001).  *See Vogel*,

14  992 F. Supp. 2d at 1010-11; *see also Ridola*, 2018 WL 2287668, at *10.  Under the *Colorado*

15  *Cross* burden-shifting analysis, the plaintiff bears the initial burden of production to show that a

16  suggested method for removing a barrier is readily achievable, and the defendant bears the

17  ultimate burden of persuasion on an affirmative defense that removal of a barrier is not readily

18  achievable.  *See Vogel*, 992 F. Supp. 2d at 1010 (citing *Colorado Cross*, 264 F.3d at 1006).  In the

19  historic facilities context, the Ninth Circuit declined to adopt *Colorado Cross*'s burden-shifting

20  framework and instead placed the burden of production squarely upon the defendant as "the party

21  with the best access to information regarding the historical significance of the building."  *Molski v.*

22  *Foley Estates Vineyard and Winery, LLC*, 531 F.3d 1043, 1048 (9th Cir. 2008).  Although limited

23  to the historic facilities context, *Foley Estates* recognized that Congress relies on private

24  individuals to enforce the ADA and also noted the general principle espoused by the *Colorado*

25  *Cross*'s dissent:  "'[i]f plaintiffs must all but present the court with a pre-approved construction

26  contract for a sum certain which includes detailed plans, impact statements, engineering studies,

27  and permits to meet their threshold burden, virtually no plaintiff could afford to bring an

28  architectural barrier removal claim under 42 U.S.C. § 12182(b)(2)(A)(iv).'"  *Id*. at 1048-49

United States District Court
Northern District of California

(quoting *Colorado Cross*, 264 F.3d at 1011). "We need not require an ADA plaintiff to undertake such heroic measures." *Id*. at 1049.

Regardless of who bears the burden of proof, *Foley Estates*' general observations, as well as cases applying the *Colorado Cross* burden-shifting framework, suggest that the plaintiff's initial burden, at least in the default judgment context, is not onerous. *See, e.g., Johnson v. Hall*, No. 2:11-cv-2817-GEB-JFM, 2012 WL 1604715, at *3 (E.D. Cal., May 7, 2012) (concluding that the plaintiff met his burden where the complaint's allegation that the barriers "are readily removable" was deemed true on default and where he sought injunctive relief to remove barriers if it was readily achievable to do so); *Johnson v. Beahm*, No. 2:11-cv-0294-MCE-JFM, 2011 WL 5508893, at *3 (E.D. Cal., Nov. 8, 2011) (same).

Mr. Johnson alleges that the identified barriers are "easily removed without much difficulty or expense" and "are the types of barriers identified by the Department of Justice as presumably readily achievable to remove . . .." Dkt. No. 1 ¶ 27. Federal regulations provide a non-exclusive list of steps to remove barriers, including "[r]epositioning shelves," "[r]earranging tables, chairs, vending machines, display racks, and other furniture," and "[c]reating designated accessible parking spaces," 28 C.F.R. § 36.304(b)(3), (4), (18), and courts have observed that the listed items are "examples of readily achievable steps to remove barriers . . .." *Altimira Corp.*, 2017 WL 1383469, at *3; *see also Vogel*, 992 F. Supp. 2d at 1011 (concluding that the plaintiff met his initial burden of showing that the barrier removal was readily achievable where he alleged that the defendant had the financial resources to remove the barriers without difficulty, but refused to do so, and where many of the barriers in question were among those listed in 28 C.F.R. § 36.304(b)). Moreover, at the default judgment stage, courts have found allegations similar to Mr. Johnson's allegations sufficient to show that the removal of the barriers at issue is readily achievable. *See, e.g., Altimira Corp.*, 2017 WL 1383469 at *3 (concluding that the plaintiff's allegations, including those concerning accessible parking spaces and the defendant's sales counter, fell within the scope of readily achievable steps set forth in 28 C.F.R. § 36.304).

This Court finds that, in this default proceeding, Mr. Johnson has satisfied his burden that removal of the barriers at issue is readily achievable. Because Long Thanh Do defaulted and has

not defended this action, he has failed to meet his burden to show that removal of the identified barriers is not readily achievable.

### b. Unruh Act Claim

"Any violation of the ADA necessarily constitutes a violation of the Unruh Act." *M.J. Cable, Inc.*, 481 F.3d at 731 (citing Unruh Act, Cal. Civ. Code § 51(f)). Thus, to the extent Mr. Johnson has an ADA claim based on the Store's lack of compliant parking, accessible routes and transaction counter, he also has an Unruh Act claim based on those barriers.

### 3. The amount of money at stake

This *Eitel* factor requires the Court to consider the sum of money at stake in relation to the seriousness of a defendant's conduct. *Love v. Griffin*, No. 18-cv-00976-JSC, 2018 WL 4471073, at *5 (N.D. Cal., Aug. 20, 2018). Mr. Johnson seeks statutory damages under the Unruh Act and an award of attorney's fees and costs. For the reasons discussed more fully below, the amount of damages requested is not substantial and is proportional to the conduct alleged. The amount of attorney's fees claimed, while subject to reduction by the Court, is also not substantial.

### 4. The possibility of a dispute concerning material facts and whether defendants' default was due to excusable neglect

Under the fourth and fifth *Eitel* factors, the Court considers whether there is a possibility of a dispute over any material fact and whether defendants' failure to respond was the result of excusable neglect. *Griffin*, 2018 WL 4471073 at *5; *Ridola*, 2018 WL 2287668 at *13. Because Mr. Johnson pleads plausible claims for violations of the ADA and the Unruh Act, and as all liability-related allegations are deemed true, there is nothing before the Court that indicates a possibility of a dispute as to material facts. Moreover, there is no indication that Long Thanh Do's default was due to excusable neglect. The record demonstrates that Mr. Johnson served Long Thanh Do with notice of this lawsuit, as well as with copies of his initial request for the entry of his default and the original motion for default judgment. Dkt. Nos. 10, 17. Long Thanh Do has never appeared or responded, suggesting that he has chosen not to present a defense in this matter. These factors weigh in favor of default judgment.

### 5. The strong policy favoring decisions on the merits

While the Court prefers to decide matters on the merits, Long Thanh Do's failure to participate in this litigation makes that impossible. *See Ridola*, 2018 2287668 at *13 ("Although federal policy favors decision on the merits, Rule 55(b)(2) permits entry of default judgment in situations, such as this, where a defendant refuses to litigate."). Default judgment therefore is Mr. Johnson's only recourse. *See United States v. Roof Guard Roofing Co, Inc.*, No. 17-cv-02592-NC, 2017 WL 6994215, at *3 (N.D. Cal., Dec. 14, 2017) ("When a properly adversarial search for the truth is rendered futile, default judgment is the appropriate outcome.").

### D. Requested Relief

Because this Court concludes that default judgment is warranted, it now considers Mr. Johnson's request for injunctive relief, as well as statutory damages under the Unruh Act, and attorneys' fees and costs.

### 1. Injunctive Relief

Aggrieved individuals "may obtain injunctive relief against public accommodations with architectural barriers, including 'an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities.'" *M.J. Cable, Inc.*, 481 F.3d at 730 (quoting 42 U.S.C. § 12188(a)(2)). Injunctive relief is also available under the Unruh Act. *See* Cal. Civ. Code § 52.1(c). "A plaintiff need not satisfy '[t]he standard requirements for equitable relief . . . when an injunction is sought to prevent the violation of a federal statute [that] specifically provides for injunctive relief.'" *Griffin*, 2018 WL 4471073 at *6 (quoting *Moeller v. Taco Bell*, 816 F. Supp. 2d 831, 859 (N.D. Cal. 2011)). Thus, injunctive relief is proper under the ADA where the plaintiff establishes that "architectural barriers at the defendant's establishment violate the ADA and the removal of the barriers is readily achievable." *Ridola*, 2018 WL 2287668 at *13 (citing *Moreno v. La Curacao*, 463 Fed. Apps. 669, 670 (9th Cir. 2011)).

For the reasons discussed above, Mr. Johnson has shown that he is entitled to injunctive relief with respect to the Store's parking space, paths of travel, and transaction counter. The Court recommends that his request for injunctive relief be granted. *See Rite Aid Corp.*, 992 F. Supp. 2d at 1015-16 (granting motion for default judgment against the defendant landlord and compelling

that defendant to provide injunctive relief to the extent the defendant had the legal right and ability to make the physical changes necessary to remove the specific barriers about which the plaintiff complained).

**2.    Statutory Damages**

"Monetary damages are not available in private suits under Title III of the ADA. *M.J. Cable, Inc.*, 481 F.3d at 730 (citing *Wander v. Kaus*, 304 F.3d 856, 858 (9th Cir.2002)).  However, the Unruh Act provides a minimum statutory damages award of $4,000 "for each occasion an individual is denied equal access to an establishment covered by the Unruh Act . . .."  *Ridola*, 2018 WL 2287668 at *15 (citing Cal. Civ. Code § 52(a)).  Mr. Johnson "need not prove [he] suffered actual damages to recover the independent statutory damages of $4,000."  *M.J. Cable, Inc.*, 481 F.3d at 731.  He requests a statutory award of $8,000 with respect to his several visits to the Store. This Court finds that Mr. Johnson has established his entitlement to an award of $8,000 in statutory damages.

**3.    Attorney's Fees and Costs**

Mr. Johnson requests $6,135 in attorneys' fees and $670 in costs, for a total award of $6,805.  The ADA gives courts the discretion to award attorney's fees, including litigation expenses and costs, to prevailing parties.  *M.J. Cable, Inc.*, 481 F.3d at 730 (citing 42 U.S.C. § 12205).  Similarly, the Unruh Act provides for an award of fees "as may be determined by the court."  Cal. Civ. Code § 52(b)(3).

**a.    Attorney's Fees**

Whether calculating attorney's fees under California or federal law, courts follow the lodestar approach.  "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983), abrogated on other grounds by *Tex. State Teachers Ass'n. v. Garland Indep. Sch. Dist.*, 489 U.S. 782 (1989).  The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed.  *Id.*

**i.    Reasonable Hourly Rate**

"In determining a reasonable hourly rate, the district court should be guided by the rate

prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210-11 (9th Cir. 1986), reh'g denied, amended on other grounds, 808 F.2d 1373 (9th Cir. 1987) (citing *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). "Generally, the relevant community is the forum in which the district court sits." *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997). The fee applicant has the burden of producing evidence, other than declarations of interested counsel, that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation. *Blum*, 465 U.S. at 896 n.11. "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of America v. Phelps Dodge Co.*, 896 F.2d 403, 407 (9th Cir. 1990).

As noted above, Mr. Johnson seeks fees based on the hourly rates of the following four attorneys: Mark Potter ($650/hour), Russell Handy ($650/hour), Amanda Seabock ($450/hour) and Dennis Price ($450/hour).

To support the reasonableness of the identified hourly rates, Mr. Johnson relies on a declaration from Mr. Price, one of the attorneys for whom fees are sought. Dkt. No. 20-4. Mr. Price's declaration includes a description of the attorneys' qualifications and experience, as well as a billing statement for work performed in this case. Mr. Price's declaration avers that "Mr. Potter's billing rate of $650 per hour has been granted in scores of recent federal court rulings, granting default judgment applications" (Dkt. No. 20-4 ¶ 9), and concludes with the following assertion:

> Because the nature of my practice is wholly dependent on billing at a market rate, I have extensive experience with respect to what attorneys specializing in disability law and civil rights bill for civil litigation and what courts are routinely awarding and can attest that the rates billed by the Center for Disability Access for its attorneys are well within market rates.

*Id.* ¶ 14.

Mr. Johnson cites to one decision by another court in this district, *Love v. Rivendell II,*

1   *Ltd., et al.*, Case No. 18-cv-03907-JST (EDL) (N.D. Cal., Mar. 11, 2019), in which the court

2   approved a $650 hour rate for Messrs. Potter and Handy.  Dkt. No. 20-10; *See Rivendell*, Dkt. No.

3   25 (report and recommendation); *see also* Dkt. No. 30 (order adopting report and

4   recommendation).  Aside from *Rivendell*, however, Mr. Johnson does not identify *any* other

5   decisions, among the supposed "scores of recent federal court rulings," in which the courts

6   reportedly have awarded Mr. Johnson fees at this rate for any of his attorneys.  As noted above, in

7   his amended motion Mr. Johnson also cites to the *Lindsay* decision from the Central District of

8   California.  Dkt. No. 20-9.  However, *Lindsay* did not award fees at $650/hour, but merely

9   "summarily accept[ed]" the Potter Handy firm's requested rates ranging between $400 and $595.

10  *Id*. at 2.  Moreover, *Lindsay* is irrelevant inasmuch as it concerns fees awarded outside the

11  Northern District of California.  At oral argument, Mr. Johnson's counsel confirmed that, aside

12  from *Rivendell* and *Lindsay*, she had no additional authority to provide to the Court.

13       Additionally, Mr. Price does not actually identify the rates at which attorneys specializing

14  in disability and other civil rights matters bill for civil litigation, even though he asserts that he has

15  "extensive experience" with respect to that information, and even though he says his practice

16  depends on "billing at a market rate."  Indeed, Mr. Johnson's fees request contains scant

17  information about the prevailing market rate for similar work performed by attorneys of

18  comparable skill, experience, and reputation in this community.  He has not submitted declarations

19  from other attorneys attesting to the reasonableness of the claimed rates.

20       At the motion hearing, Mr. Johnson's counsel confirmed, as they have in other cases they

21  have filed before this Court, that the Potter Handy firm handles ADA cases on a contingency

22  basis, and that (contrary to Mr. Price's statements in his declaration) there is no "market" based on

23  fees and rates that actually are billed to clients.  Rather, the "market" is based on rates that the

24  court in the relevant district finds appropriate.  Thus, Mr. Johnson's counsel also confirmed that

25  for disability access cases, the Potter Handy firm sets hourly rates based on the district in which

26  the litigation is pending, and not necessarily on the district where the client is located or where the

27  attorneys have their offices.  As a result, the same Potter Handy attorney has different rates for the

28

same work and the same client depending on the court in which the action is venued.[8]

Other than *Rivendell*, however, Mr. Johnson does not cite decisions issued by courts in this district tasked with deciding fees motions like his. As another court in this district recently observed, the *Rivendell* decision relied on cases that concerned work that was substantially different than the work performed in the present action. *See Johnson v. AutoZone, Inc.*, No. 17-cv-02941-PJH, 2019 WL 2288111, at *6 n.4 (N.D. Cal., May 29, 2019). For example, *Civil Rights Education and Enforcement Ctr. v. Ashford Hospitality Trust, Inc.*, No. 15-cv-00216-DMR, 2016 WL 1177950 (N.D. Cal., Mar. 22, 2016), was a complex class action matter involving 54 hotels spread among multiple states. In *Elder v. Nat'l Conference of Bar Examiners*, the court observed that the case set "new precedent" that caused the California State Bar to "change a policy which impacts potentially hundreds of individuals each year across California." No. C11-00199SI, 2011 WL 4079623 at *4 (N.D. Cal. Sept. 12, 2011). And in *Rodriguez v. Barrita*, 53 F. Supp. 3d 1268 (N.D. Cal. 2014), the court approved hourly rates of $645 for an attorney with over 45 years experience, $550 for an attorney with 22 years of experience, and $425 for an attorney who had been working with plaintiff's counsel's firm for about 5 years. In *Rodriguez*, counsel's requested rates were either not contested by the opposing party or were supported by a declaration from another disability law attorney. *Id*. at 1278-79.

The Court is required to consider cases that were decided relatively contemporaneously with the time the work was performed in this case. *See Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 981 (9th Cir. 2008) (noting that "in determining the prevailing market rate a district court abuses its discretion to the extent it relies on cases decided years before the attorneys actually rendered their services."); *Bell v. Clackamas County*, 341 F.3d 858, 869 (9th Cir. 2003) (holding that it was an abuse of discretion for the district court to apply rates in effect more than two years before the work was performed). Mr. Johnson's attorneys performed work in this case

---

[8] Appended to the billing statement submitted for this matter is a spreadsheet that, according to Mr. Johnson's counsel, was inadvertently included in the present motion, but nonetheless indicates the hourly rates that the Potter Handy firm uses to submit billing statements to courts for approval, depending on the jurisdiction in which a particular matter is venued. Dkt. No. 20-11 at 5.

from December 2018 through July 2019.[9]  Dkt. No. 20-11.  In the absence of other evidence of what attorneys of comparable skill, experience, and reputation were billing for similar work performed during the relevant time period in the relevant market, the Court considers recent decisions involving ADA disputes like this one.

As noted, Messrs. Potter and Handy each seek fees at an hourly rate of $650.  Mr. Price avers that Mr. Potter has been a practicing attorney for approximately 25 years, mostly focusing on disability law, and that Mr. Handy has devoted his practice to disability law for approximately 20 years.  With the exception of *Rivendell*, courts in this district have awarded fees based on a $425 hourly rate for Messrs Potter and Handy.  *See, e.g., AutoZone, Inc.*, 2019 WL 2288111, at *6 (citing cases); *see also, e.g., Gonzalez v. Machado*, No. 17-cv-02203-LB, 2019 WL 3017647 (N.D. Cal. July 10, 2019); *Johnson v. Express Auto Clinic, Inc.*, No. 18-cv-00464-KAW, 2019 WL 2996431 (N.D. Cal. July 9, 2019); *Johnson v. VN Alliance LLC*, No. 18-cv-01372-BLF, 2019 WL 2515749 (N.D. Cal. June 18, 2019); *Johnson v. RK Investment Properties, Inc.*, No. 18-cv-01132-KAW, 2019 WL 1575206 (N.D. Cal. Mar. 18, 2019); *Arroyo v. Aldabashi*, No. 16-cv-06181-JCS, 2018 WL 4961637, at *5 (N.D. Cal. Oct. 15, 2018); *Altamira Corp.*, 2017 WL 1383469 at *4-*5; *Five M, LLC*, 2017 WL 747465 at *5.

More recently, this Court and another in this district have approved a $475 hourly rate for Messrs. Potter and Handy.  *See Johnson v. Rocklin of California LLC*, No. 18-cv-06836-VKD, 2019 WL 3854308, at *11 (N.D. Cal. Aug. 16, 2019) (report and recommendation); *see also* Case No. 18-cv-06836, Dkt. No. 27 (order adopting report and recommendation); *Johnson v. Shobeiri*, No. 18-cv-04816-VKD, 2019 WL 5458106, at *5 (N.D. Cal. Oct. 24, 2019); *Shaw v. Kelley*, No. 16-cv-03768-VKD, 2019 WL 5102610, at *5 (N.D. Cal. Oct. 11, 2019); *Johnson v. Campbell Plaza Development Co.*, No. 5:18-cv-05878-SVK, Dkt. No. 26 (N.D. Cal. Sept. 27, 2019).

With respect to attorneys at different firms, another court in this district has approved rates of at least $700/hour.  *See Martin v. Diva Hospitality Group, Inc.,* No. 16-cv-04103-EDL, 2018 WL 6710705 (N.D. Cal. Dec. 7, 2018).  In that case, the court approved a rate of $700 for an

---

[9] As discussed above, at oral argument Mr. Johnson's counsel confirmed that his fees request does not include time his counsel incurred in connection with the hearing on the present motion.

attorney with 28 years of experience as a trial lawyer, with 10 years devoted exclusively to disability law; a $700 rate for an attorney who had been practicing for over 27 years, including 25 years of experience in disability matters; and a rate of $795 for an attorney who had been practicing for 49 years, with 43 years of experience in disability law. *Id*. at *2.

As previously noted by this Court, however, compared with fees awarded to other attorneys with similar experience, Mr. Johnson's request for a $650 hourly rate appears high. *See Rocklin of California LLC*, 2019 WL 3854308 at *10. Another court in this district has observed that a rate over $700/hour is the exception, and not the norm, for disability cases. *See Chapman v. NJ Properties, Inc.*, No. 5:16-cv-02893-EJD, 2019 WL 3718585, at *4 (N.D. Cal., Aug. 7, 2019) (declining to award fees at $750/hour for an attorney with over 40 years of experience, including 25 years in disability access litigation, who had previously been awarded fees at $500/hour, and instead awarding fees at $600/hour to account for inflation). Indeed, for attorneys with approximately 20 or more years of experience, courts in this district have generally approved rates ranging from $350 to $495 in disability cases. *See, e.g., Castillo-Antonio v. Lam*, No. 18-cv-04593-EDL, 2019 WL 2642469, at *7 (N.D. Cal., Apr. 10, 2019) (approving, on a motion for default judgment, a $350 hourly rate for an attorney with over 20 years of experience); *Johnson v. Castagnola*, No. 18-cv-00583-SVK, 2019 WL 827640, at *2 (N.D. Cal., Feb. 21, 2019) (approving a $350 rate for an attorney with 20 years of litigation experience, noting that the requested rate was unopposed by defendant and in line with rates approved in the Northern District); *Wilson v. Red Robin Int'l, Inc.*, No. 17-cv-00685-BLF, 2018 WL 5982868, at *3 (N.D. Cal., Nov. 14, 2018) (approving a $495 rate for an attorney with 24 years of experience in civil rights litigation, including 12 years devoted to disability law and a $475 rate for an attorney with over 17 years of litigation experience and more than 8 years of experience in disability law).

Mr. Johnson seeks fees at $450/hour for work performed by Mr. Price (approximately 8 years of practice, with 7 years in disability rights cases), and Ms. Seabock (approximately 6 years of practice, focusing on disability rights cases). For Mr. Price and Ms. Seabock, courts in this district, including this Court, have approved rates ranging from $300/hour, *see, e.g., Gonzalez*, 2019 WL 3017647 at *4; *AutoZone, Inc.*, 2019 WL 2288111 at *7, up to $350/hour, *see, e.g.,*

*Shobeiri*, 2019 WL 5458106 at *5; *Kelley*, 2019 WL 5102610 at *5; *Rocklin of California*, 2019 WL 38543008 at *11; *Campbell Plaza Development Co.*, No. 18-cv-05878-SVK, Dkt. No. 26 at 10; *NJ Properties, Inc.*, 2019 WL 3718585 at *4; *Express Auto Clinic, Inc.*, 2019 WL 2996431 at *8; *Griffin*, 2018 WL 4471073 at *8; *Arroyo*, 2018 WL 4961637 at *5. The Court's research indicates that the higher $350 rate is in line with fees awarded to other attorneys with comparable or greater experience. *See, e.g., Che v. Lo*, No. 18-cv-00402-CRB, 2019 WL 2579205, at *2 (N.D. Cal., June 24, 2019) (on a motion for default judgment, approving a rate of $400/hour for an attorney with 10 years experience, including 6 to 8 years in disability rights matters); *Ridola v. Chao*, No. 16-cv-02246-BLF, 2018 WL 2287668 at *16, Dkt. No. 58-8, Declaration of Irene Karbelashvili ¶¶ 3, 6 (approving a rate of $325/hour, voluntarily reduced from $450/hour for purposes of plaintiff's fees motion, for an attorney with 12 years of experience, including 6 years focused on disability access law).

The present matter is a relatively simple one, involving straight-forward application of the law, and which does not present novel or difficult issues requiring a high level of skill or specialization. For the reasons discussed above, this Court is not persuaded that the rates awarded in *Rivendell* are appropriate here. Nor has Mr. Johnson demonstrated that rates approaching the exceptional rates awarded in *Diva Hospitality* are warranted. While Mr. Price's declaration indicates that the attorneys in question have considerable experience, the Court also recognizes that "[t]he market rate for legal services . . . does not necessarily rise in direct relation to an attorney's skill and experience." *NJ Properties, Inc.*, 2019 WL 3718585 at *4.

This Court is mindful of the Ninth Circuit's observation that "[t]he district court's function is to award fees that reflect economic conditions in the district; it is not to 'hold the line' at a particular rate, or to resist a rate because it would be a 'big step.'" *Moreno v. City of Sacramento*, 534 F.3d 1106, 1115 (9th Cir. 2008). In view of the range of rates approved for attorneys practicing in this field, and in the absence of declarations from other attorneys of comparable skill, experience and reputation, and further recognizing that decisions pertaining to the same attorneys in question are particularly salient, *United Steelworkers*, 896 F.2d at 407, this Court will award fees at the following rates: Mr. Potter ($475/hour), Mr. Handy ($475), Mr. Price ($350) and Ms.

Seabock ($350).

### ii.    Reasonable Hours

Mr. Johnson "bears the burden of establishing entitlement to an award and documenting the appropriate hours expended[.]" *Hensley*, 461 U.S. at 437. "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Id.* at 433. A district court should also exclude from the lodestar fee calculation any hours that were not "reasonably expended," such as hours that are excessive, redundant, or otherwise unnecessary. *See id*. at 433-34; *see also Chalmers*, 796 F.2d at 1210 ("Those hours may be reduced by the court where documentation of the hours is inadequate; if the case was overstaffed and hours are duplicated; if the hours expended are deemed excessive or otherwise unnecessary.").

Having reviewed the timesheet submitted by Mr. Johnson's counsel (Dkt. No. 20-11), the Court finds the 11.1 hours incurred reasonable.[10]

### iii.    Lodestar Amount

Multiplying the reasonable hourly rates and the hours reasonably expended, yields a lodestar amount of $4,597.50 as reflected in the following table:

| Attorney | Rate | Hours | Total |
|----------|------|-------|-------|
| Mark Potter | $475 | 3.1 | $1472.50 |
| Russell Handy | $475 | 2.6 | $1,235.00 |
| Dennis Price | $350 | 2.7 | $945.00 |
| Amanda Seabock | $350 | 2.7 | $945.00 |
|  |  |  | $4,597.50 |

### b.    Costs

The record substantiates Mr. Johnson's request for the $400 filing fee and $270.00 in other costs. Dkt. Nos. 1, 8, 9, 20-11.

Accordingly, this Court recommends that Mr. Johnson be awarded $4,597.50 in attorney's

---

[10] Furthermore, the timesheet indicates that Mr. Johnson seeks fees incurred only in preparation of his original motion for default judgment, and that he does not seek any additional fees incurred in preparing the present amended motion.

fees and $670 in costs, for a total award of $5,267.50.

## IV.    CONCLUSION

Because not all parties have consented to the undersigned's jurisdiction, IT IS ORDERED THAT this case be reassigned to a district judge.  For the reasons discussed above, it is RECOMMENDED that:

1.    Mr. Johnson's motion for default judgment be denied as to Oakwood Center.

2.    Mr. Johnson's motion for default judgment be granted as to Long Thanh Do.

3.    Mr. Johnson be awarded statutory damages in the amount of $8,000.

4.    Mr. Johnson be awarded $670 in costs.

5.    Mr. Johnson's request for attorneys' fees be granted in the amount $4,597.50.

6.    Mr. Johnson be granted an injunction requiring defendant Long Thanh Do, to the extent that defendant in his capacity as the alleged owner of the Store has the legal right and ability to do so, to provide accessible parking spaces, paths of travel, and transaction counter as required by the ADAAG 1991 Standards, 28 C.F.R., Part 36, App. D §§ 4.6.3, 7.2(1); 2010 Standards, 36 C.F.R., Part 1191, App. B § 225.2.2; and 2010 Standards, 36 C.F.R., Part 1191, App. D §§ 302.1, 403.5.1, 502.4, 904.4 and 904.4.1.

Mr. Johnson shall promptly serve each defendant with this Report and Recommendation and file a proof of service with the Court.  Any party may serve and file objections to this Report and Recommendation within 14 days after being served.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; Civ. L.R. 72-3.

Dated:   December 27, 2019

*Virginia K. DeMarchi*
VIRGINIA K. DEMARCHI
United States Magistrate Judge